CHAVIS *v.* MARTIN.

4-8063

199 S. W. 2d 598

Opinion delivered February 10, 1947.

Rehearing denied March 10, 1947.

*A. D. Chavis,* for appellant.

*Rowell, Rowell & Dickey,* for appellee.

McHANEY, Justice. Sub-District No. 1 to Drainage District No. 2 of Jefferson County brought this action against appellee, David Martin, a negro, to cancel a deed from the State to appellee, dated August 21, 1945, to the east one-half, northeast quarter of section 32, township 4 south, range 7 west, on the ground that the forfeiture and sale to the State for the 1937 taxes were void and the State acquired no title because of a previous foreclosure and sale to the plaintiff in 1936 for delinquent assessments in plaintiff district. Also the cancellation of a deed from Plum Bayou Levee District to appellee, dated September 17, 1945, to the same land, was sought on the ground that said deed amounted to a redemption only, since appellee was relying on his purchase from the State and recognized his obligation to pay the taxes due said levee district. Cancellation of both deeds was sought to remove them as clouds on plaintiff's title.

Appellee Martin answered with a general denial and by way of cross-complaint against appellant, an attorney of Pine Bluff, Arkansas, alleged that he employed appellant as his attorney and paid him a fee of $35 to investigate the records and to advise appellee whether he could purchase from the State and several improvement districts his father's old home place, consisting of 80 acres in section 32-4-7; that subsequently appellant advised appellee that he had located his "Home 80," and that he could secure title from the State for $100 which appellee paid to appellant on July 2, 1945, receiving a receipt therefor; that on August 15, 1945, appellant wrote him that, if he would bring in $400 more, appellant could get title from the improvement districts involved, which amount was paid to appellant on August 20, 1945, for which he holds appellant's receipt; that on September

7, 1945, appellant again wrote him that the improvement taxes "look all right and you bring me $300, if you can, and it clear that up," which he did on September 10, 1945, for which he holds a receipt; that appellant negligently purchased in appellee's name from the State the land above described which was not appellee's "Home Place" and paid the sum of $329 for the State's deed, when he should have purchased the title of plaintiff district, and with such title he could have redeemed from the State for $1, because said district acquired the title before the State's lien for general taxes attached and for which it was sold to the State (See Act 206 of 1943); that, on September 17, 1945, appellant, as his attorney, purchased for him the title of Plum Bayou Levee District for which he paid $21.05, but failed to purchase the title of plaintiff district, or that of three other districts, each of which had foreclosed their liens for delinquent improvement district assessments on said lands; that said action on the part of appellant as attorney for appellee constituted negligence or fraud; and that, if plaintiff should prevail, he should have judgment against appellant in the sum of $835, with interest, for which he prayed.

Appellant appeared and moved to strike the cross-complaint on the grounds of misjoinder of actions, and that appellee had an adequate remedy at law, and that a court of equity had no jurisdiction. He also moved to require the cross-complaint to be made more definite and certain. These motions were overruled. He answered the cross-complaint admitting his employment as attorney for appellee for the purposes alleged, the payment to him of the sums of money as alleged, the writing of the various letters, the purchase from the State by him for appellee the land above described, the payment to the State of $329 for its deed and practically all other material allegations of the cross-complaint, but specifically denied that his actions as attorney for appellee constituted negligence or fraud, that he should be made a party to the action, or that appellee should recover against him. He further answered with a lengthy explanation or attempted justification of his dealings with

appellee, and again denied that he misrepresented anything or was negligent in any manner as attorney for him, and concluded with a special demurrer to the jurisdiction. He attached to his answer certain exhibits from ''A'' to ''R,'' inclusive, consisting of correspondence with appellee and others, including certain memoranda regarding various improvement district taxes and titles.

Trial resulted in a decree canceling the deeds of the State and the Plum Bayou Levee District to appellee for the reasons alleged in the complaint. No appeal has been taken from that part of the decree. As to the cross-action the court found: ''That the cross-defendant, A. D. Chavis, obtained from David Martin the sum of eight hundred thirty-five and 00/100 dollars ($835) upon the representation that he would ascertain whether what David Martin called his 'home 80' as State land and would obtain a good title thereto from the improvement districts within which it was located, as well as clear the State title and obtain a deed from the record owner; that instead of carrying out this agreement, the said A. D. Chavis did not, so far as the evidence in this case shows, examine the abstract records to determine which was the Martin 80 acres, although the same were readily accessible to him and although he had examined said abstract records at other times in the past; that instead of obtaining a good title to the Martin place, which was the west half of the northeast quarter of said section 32, the said A. D. Chavis obtained two deeds, one from the State of Arkansas and one from Plum Bayou Levee District on the east half of the northeast quarter of said section, leaving five improvement district titles outstanding.

''That the said A. D. Chavis expended the sum of three hundred twenty-nine and 00/100 dollars ($329) to obtain a deed from the State of Arkansas when the State's title could have been cleared by payment of one dollar ($1) under Act 206 of 1943; that such deed was void, operated to convey no title to the defendant and was an absolute waste of that much money. As already stated in this decree, the Plum Bayou Levee District

deed was also subject to cancellation so that the said cross-defendant has rendered no service of any sort to the defendant and that said cross-defendant has made no effort to contact the plaintiff or Drainage District No. 2 of Jefferson County, Arkansas, which are separate entities, Bradley Slough Drainage District, Sub-District No. 1 to Bradley Slough Drainage District or No Fence District No. 2, all of which districts embrace the land herein involved; that said cross-defendant also failed to obtain a deed from Miss Emma White, who was the record owner prior to the sales to said improvement districts.

"That the sums expended by said cross-defendant follows:

"Deed from the State of Arkansas, $329; deed from Plum Bayou Levee District, $21.05; subsequent taxes in Plum Bayou Levee District, $190; recording two deeds, $3, or a total of $543.05, and that said cross-defendant has converted to his own use the remainder of the $835 paid him, which amounts to $291.95.

"That the said cross-defendant, A. D. Chavis, is guilty of fraud in misleading and deceiving his client, David Martin, in his so-called effort to clear the title of either the west half or the east half of the northeast quarter of said section 32; that the services of said cross-defendant resulted in no benefit whatsoever to the defendant and that said cross-defendant is not entitled to the thirty-five dollars ($35) fee paid him for determining whether the Martin 'home 80' was State land subject to being purchased by the defendant."

Judgment was rendered against appellant for $835 with interest at 6 per cent. from the date of the decree, March 5, 1946. This appeal is from that part of said decree.

One of the questions relied on for a reversal of the judgment against him by appellant is that the cross-complaint was improper because he had no interest in the original cause of action. Section 1426 of Pope's Digest provides that: "A defendant may file a cross-complaint against persons other than the plaintiff .. . . when a

defendant has a cause of action against a co-defendant, or. a person not a party to the action, and affecting the subject-matter of the action . . .'' Appellant says he had no interest in the action of plaintiff against appellee to cancel the two deeds he had procured for appellee as his attorney and for which he had received from appellee $835 to cover purchase price and fee. We think he did and that he should not be heard to say that he did not, in view of the facts here presented. Appellant did everything that was done in the unsuccessful attempt to acquire the title to land for appellee who trusted him implicitly and did nothing but follow the advice of appellant to put up more money when called upon to do so. Had appellant taken the title in his own name and then conveyed to appellee, he would have been a necessary party defendant in the original action, and a cross-action against him by appellee certainly would have been proper. In substance, his position here is the same and the cross-action was proper. Compare *Taylor* v. *Harris,* 186 Ark. 580, 54 S. W. 2d 701. Having jurisdiction in the main suit, the court retained it to administer complete relief. *Taylor* v. *Harris, supra.* See, also, *Norfleet* v. *Stewart,* 180 Ark 161, 20 S. W. 2d 868, where chancery entertained jurisdiction of a suit to recover money paid by a client to an attorney to be used in settling a judgment for damages against the client, which was converted by the attorney.

In *Maloney* v. *Terry,* 70 Ark. 189, 66 S. W. 919, 72 S. W. 570, it was held, to quote a headnote: ''Chancery has jurisdiction of a suit by a client to have his attorney declared a trustee where the attorney, settling a claim against the client, fraudulently procured and retained a greater sum than was paid to settle the claim, although an action at law for money had and received would also lie.''

Appellant also contends that he was guilty of neither negligence or fraud in the transaction complained of. The trial court found that appellant ''is guilty of fraud in misleading and deceiving his client,'' but whether it was fraud, negligence, or breach of duty, the result would

be the same, and we think the least that can be said about it is that it was negligence or breach of duty. For instance, he used appellee's money to the extent of $329 to buy the State's title, when an investigation of the county records would have disclosed that the title to the tract had, previous to the sale to the State, been acquired by plaintiff district, and that a deed from the State would convey no title because the land was not subject to general taxation while the title is in an improvement district. *Robinson v. Indiana & Ark. Lbr. & Mfg. Co.,* 128 Ark. 550, 194 S. W. 870, 3 A. L. R. 1426, and a number of cases following it. See Sheppard's Ark. citations. Moreover, had he bought the plaintiff's title, or that of the levee district or either of the four other improvement districts, he could have gotten a deed from the State for $1 by following the provisions of Act 206 of 1943, and thus have saved his client $328. After he acquired a deed from the State, he got a deed from the levee district, paying $21.05 therefor, and then paid the accrued taxes to the district in the sum of $190. The court's decree canceled both titles and there is no appeal from said decree. As a net result appellee has been out $835, of which appellant has retained for his own use $291.95, and appellee got nothing but a sad experience, including a lawsuit, for his outlay. In *Norfleet v. Stewart,* 180 Ark. 161, 20 S. W. 2d 868, we held that "actual fraud in such cases is not necessary to give the client a right to redress. A breach of duty is constructive fraud, and is sufficient." Citing *Baker v. Humphrey,* 101 U. S. 494, 25 L. Ed. 1065, Chief Justice HART, for the court, there said: "A fiduciary relation exists between attorney and client, and the confidence which the relationship begets between the parties makes it necessary for the attorney to act in the utmost good faith. He must not only not misrepresent any fact to his client, but there must be an entire absence of concealment or suppression of any facts within his knowledge which might influence the client, and the burden of establishing the fairness of the transaction is upon the attorney. This rule is of universal application, and is recognized by all of the text-writers on the subject."

In the recent case of *Johnson, Admr.,* v. *Rolf*, 208 Ark. 554, 187 S. W. 2d 877, 188 S. W. 2d 137, after citing *Norfleet* v. *Stewart, supra,* and, after saying that, in the relationship between attorney and client, "there must be an entire absence of concealment or suppression of any facts within the attorney's knowledge which might influence the client, and the burden of establishing fairness of the transaction under investigation rests on the attorney," we quoted from *Thweatt* v. *Freeman,* 73 Ark. 575, 84 S. W. 720, the following: "Equity regards the relation of attorney and client much in the same light as that of guardian and ward, and will relieve a client from hard bargains or from an undue advantage secured over him by his attorney. And the client, in order to secure such relief, is not bound to show that there has been any imposition or fraud, nor is the transaction necessarily void; but if it is a transaction in which the relation between the parties exerted, or might reasonably have exerted, any influence in the attorney's favor, then the burden of establishing its perfect fairness is thrown upon the attorney."

From all of these cases it appears certain that the trial court had jurisdiction.

The evidence as to the vital facts is not in dispute, most of them being stipulated. Appellant did not testify and he called only one witness, the county clerk, to prove that the east one-half of the northeast quarter of said section forfeited in the name of Miss Emma White, from whom he unsuccessfully sought to get a quitclaim deed thereto.

We do not review the evidence, as to do so would unduly extend this opinion. We have carefully considered all of it and find it amply sufficient to support the judgment which is accordingly affirmed. This affirmance is without prejudice to appellant's right to apply to the chancery court, when he shall have satisfied the judgment against him, for subrogation to the right of appellee, if any, to the return from the State of the sum paid to it, or to the Plum Bayou Levee District.